UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEISHA M. R.[1],

                    Plaintiff,                    Civil Action No. 23-11219

v.                                               David R. Grand
                                                 United States Magistrate Judge[2]

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR REMAND (ECF No. 13), GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 11), AND REMANDING THE CASE FOR AN AWARD OF BENEFITS

Plaintiff Teisha M. R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This case is before the Court in an unusual posture. Plaintiff has already been before the Court on her present claim for DIB. In that prior case, Plaintiff and the Commissioner stipulated to remand the matter to the Commissioner so that the Administrative Law Judge ("ALJ") could, among other things, evaluate certain medical opinion evidence, "perform a

_____

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to my authority pursuant to 28 U.S.C. § 636(c).  (ECF No. 8).

*de novo* evaluation of the other medical opinions of record, and make a *de novo* residual functional capacity finding." (PageID.1694).[3]  The ALJ performed that work and issued a new decision that Plaintiff challenges in the instant action.  As with the ALJ's first decision, the Commissioner agrees that the ALJ's new decision is faulty.

On October 10, 2023, Plaintiff filed a Motion for Summary Judgment, asking the Court to (a) remand this matter to the Commissioner pursuant to sentence four of § 405(g) with instructions to immediately award benefits, or (b) in the alternative, remand with specific instructions to (1) assign this case to a new administrative law judge ("ALJ"); (2) reassess the medical opinions of record; (3) reassess Plaintiff's residual functional capacity ("RFC"); (4) reassess Plaintiff's subjective complaints; and (5) issue a new decision.  (ECF No. 11).  On November 6, 2023, the Commissioner filed a Motion to Remand, agreeing that remand for further administrative proceedings is appropriate, but arguing that an award of benefits is not proper at this time.  (ECF No. 13).  Plaintiff filed a response to the Commissioner's motion, insisting that the Court should reverse and immediately award benefits because "there is no need to afford the Commissioner a *third* chance to issue a legally defensible decision."  (ECF No. 16, PageID.2017) (emphasis in original).

For the reasons set forth below, the Court finds that the ALJ's conclusion that Plaintiff is not disabled under the Act is not supported by substantial evidence.  Moreover, given the medical opinion evidence of record, as well as the fact that this case was previously remanded for reevaluation of that evidence, the Court finds that another remand

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 6-1.

is unnecessary; any reasonable analysis of the medical opinions, as well as Plaintiff's testimony and other record evidence, amply supports a finding that Plaintiff is disabled. Thus, the Commissioner's Motion for Remand will be denied, Plaintiff's Motion for Summary Judgment will be granted, and pursuant to sentence four of 42 U.S.C. § 405(g), this case will be remanded for an award of benefits.

### A.    Background

Plaintiff was 37 years old at the time of her alleged onset date of March 15, 2018, and at 5'2" tall weighed between 120 and 180 pounds during the relevant time period. (PageID.132, 405, 1624).  She completed one year of college and has prior work history as a cashier at a gas station and as a home health aide; however, she stopped working when her medical conditions worsened after she fell out of a truck in February 2018. (PageID.393, 405, 406, 460, 1615-18).  She alleges disability as a result of multiple physical and mental impairments, including hip, back, neck, shoulder, arm, and leg pain; neuropathy in her right arm and hand, as well as her right leg and toes; myalgia; long COVID; migraines; depression; and anxiety.  (PageID.133, 425, 428, 1614, 1626).

After Plaintiff's application for DIB was denied at the initial level on July 26, 2018 (PageID.157-60), she timely requested an administrative hearing, which was held on July 9, 2020, before ALJ Gabrielle Vitellio (PageID.53-96).[4]  Plaintiff, who was represented by attorney Randall Phillips, testified at the hearing, as did vocational expert ("VE") Gail Klier.  (*Id.*).  On August 24, 2020, the ALJ issued a written decision finding that Plaintiff

---

[4] Plaintiff actually testified first at an administrative hearing held on July 19, 2019, but that hearing was not properly recorded (PageID.55), so a second hearing was held on July 9, 2020.

is not disabled under the Act. (PageID.34-46). On September 7, 2021, the Appeals Council denied review. (PageID.22-26).

On November 9, 2021, Plaintiff filed suit in this Court, seeking judicial review of the Commissioner's unfavorable decision. (PageID.1690-93). On July 8, 2022, the Honorable Shalina D. Kumar entered an Order Remanding Case Under Sentence Four Per Parties' Stipulation. (PageID.1694-99). Specifically, the parties agreed that the ALJ would, among other things, "evaluate the joint opinion of Dr. Mark Koehl and physician assistant Nicholas Wilson, perform a *de novo* evaluation of the other medical opinions of record, and make a *de novo* residual functional capacity finding." (PageID.1694). On July 29, 2022, the Appeals Council issued an Order vacating the Commissioner's decision and remanding the case to the ALJ. (PageID.1702-03). In its Order, the Appeals Council specifically noted that the ALJ erred, in relevant part, in the following respects:

- The ALJ "did not evaluate the joint opinion of Mark Koehl, M.D. and Nicholas Wilson, PA[,]" Plaintiff's treating providers.

- The ALJ "found the opinion of Gayle Oliver-Brannon Ph.D., a psychological consultative examiner, that 'the claimant's alleged symptoms as opposed to Dr. Oliver-Brannon's actual objective findings … were, overall, unremarkable'…. However, the [ALJ] did not consider that Dr. Oliver-Brannon observed limited psychomotor activity, low mood, and sad affect. Given these abnormal objective findings, Dr. Oliver-Brannon's normal findings in other areas do not reasonably show that the doctors [sic] overall findings were 'unremarkable' overall, or that the doctor relied significantly on [Plaintiff's] subjective complaints."

- The ALJ "found the prior administrative medical findings from James Tripp, Ed.D., a state agency psychological consultant, 'generally persuasive,' but did not either adopt, or explain why she discounted Dr. Tripp's opinion. Dr. Tripp indicated that the claimant could have only occasional contact with coworkers, supervisors, and the public. The [ALJ's RFC] finding provides for frequent interaction with coworkers, supervisors, and the public. The

4

[ALJ] did not explain why he did not [adopt] Dr. Tripp's opinion.

(*Id.*) (internal citations omitted).  Thus, the Appeals Council remanded the case to the ALJ for "further evaluation of these medical source opinions and prior administrative medical findings"; further consideration of Plaintiff's RFC; and, if warranted, the taking of further supplemental evidence from a VE.[5]  (PageID.1703).

As a result, a second administrative hearing was held before ALJ Vitellio on December 6, 2022.  (PageID.1612-61).  Plaintiff, represented by Attorney Phillips, again testified, as did VE William Cody.  (*Id.*).  On March 20, 2023, the ALJ issued a second written decision, again finding that Plaintiff is not disabled under the Act.  (PageID.1581-1603).  Plaintiff timely filed for judicial review of that final decision on May 23, 2023. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the

---

[5] In its Order Remanding Case Under Sentence Four Per Parties' Stipulation, the District Court made clear that the ALJ must, *inter alia*, "evaluate the joint opinion of Dr. Mark Koehl and physician assistant Nicholas Wilson, perform a *de novo* evaluation of the other medical opinions of record, and make a *de novo* [RFC] finding."  (PageID.1697).

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps .... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff is not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 15, 2018 (the alleged onset date). (PageID.1584). At Step Two, the ALJ found that she has the following 13 severe impairments: cervical radiculopathy; cervicalgia; migraines; right acromion-clavicular degeneration; brachial neuritis of the right ulnar nerve; neuralgia of the peroneal nerve; lumbar radiculopathy with right lumbar neuritis; tendinopathy of the right shoulder; myalgia; vertigo with chronic otitis media bilaterally; obesity; depression; and anxiety. (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.1585).

The ALJ then assessed Plaintiff's RFC, concluding that she is capable of performing light work, with the following additional limitations: frequent handling and fingering; frequent pushing and pulling; occasional overhead reaching with the right dominant arm; frequent overhead reaching with the left arm; occasional hand and foot controls; no climbing ladders, ropes, or scaffolds; may engage in the remaining postural activities on an occasional basis; limited to simple, routine tasks that require little or no judgment and skills that can be learned in no more than 30 days in environments with no assembly line production dictated by an external source; no work around dangerous machinery; no work at unprotected elevations; no commercial driving; and may have frequent interaction with the public, co-workers, and supervisors. (PageID.1589).

At Step Four, the ALJ found that Plaintiff is not able to perform any of her past relevant work. (PageID.1601). At Step Five, the ALJ determined, based in part on

testimony provided by the VE in response to hypothetical questions, that Plaintiff is capable of performing the jobs of sorter (90,000 jobs in the national economy), packer (100,000 jobs), and cleaner/housekeeper (120,000 jobs). (PageID.1602). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.1603).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*,

499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

*1.    Legal Framework*

Section 205(g) of the Act sets out the conditions under which the government has agreed to be sued in Social Security cases. *See* 42 U.S.C. § 405(g). The fourth sentence of § 405(g) gives a district court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*; *see also Sullivan v. Finkelstein*, 496 U.S. 617, 625 (1990). Thus, in cases like this one, where the Commissioner acknowledges that an ALJ's decision contains material legal errors and cannot stand, the Court must decide whether to remand the matter to the Commissioner or

reverse and order an immediate award of benefits.

Here, Plaintiff insists that, given how long her DIB application has been pending, the fact that the ALJ has twice failed to properly evaluate the medical opinion evidence, and the fact that the ALJ failed to comply with the Appeals Council's remand order, an immediate award of benefits is the only appropriate remedy. The Commissioner argues to the contrary that, even though the ALJ made serious errors in this case, unresolved factual questions preclude an award of benefits, and the matter must be remanded for a new hearing. For the reasons set forth below, the Court agrees with Plaintiff's position.

> ### 2.   Medical Evidence

On February 10, 2018, Plaintiff presented to the emergency room, reporting that she slipped on ice two weeks earlier and "twisted her back." (PageID.970). She indicated that, even before that fall, she had a chronic disc problem and back pain.[6] (*Id.*). At a follow up visit to one of her primary care providers at the Family Medical Center, Nicholas Wilson, P.A., on February 23, 2018, Plaintiff reported ongoing back pain and numbness down her right side. (PageID.1250). PA Wilson referred her to physical therapy and a physical medicine/rehabilitation specialist for a functional capacity evaluation. (PageID.1251).

On February 26, 2018, Plaintiff began psychiatric therapy through the Family Health Center. (PageID.1247-50). She indicated that she had not worked in approximately three weeks "per her doctor's request" due to her poor physical condition. (PageID.1247). She was diagnosed with adjustment disorder with mixed emotional features.

---

[6] An MRI of Plaintiff's lumbar and thoracic spine performed on May 27, 2017, showed mild right and moderate left neural foramina narrowing at L5-S1 related to disc bulge. (PageID.1217).

(PageID.1248).  At subsequent visits to the Family Health Center between March and May of 2018, Plaintiff reported ongoing stress, anger, and discomfort due to her physical pain, as well as thoughts of suicide.  (PageID.1236-46).

On March 27, 2018, Plaintiff underwent an EMG after she told PA Wilson that she had been experiencing numbness over her right arm and leg for more than one month. (PageID.974).  The EMG showed electrodiagnostic evidence of right motor ulnar neuropathy at the elbow, as well as right motor peroneal neuropathy at the fibular head. (*Id.*).  On April 5, 2018, Plaintiff returned to see PA Wilson, who referred Plaintiff for a consultation with an orthopedic surgeon.  (PageID.1241-42).  At a follow-up visit, on April 18, 2018, Plaintiff reported that her pain was getting worse, she was falling multiple times a day, and she requested a referral to pain management.  (PageID.1239).

On April 17, 2018, Kenneth McNamee, M.D., an orthopedic surgeon, evaluated Plaintiff for right arm pain, noting that she complained of "numbness and tingling down the ulnar nerve distribution of her right upper extremity as well as the peroneal distribution of her right lower extremity."  (PageID.1408).  Dr. McNamee found a positive Tinel sign over the right elbow, abnormal two-point discrimination over the ulnar nerve of the right upper extremity, 4/5 peroneal strength with weak dorsiflexion, and abnormal two-point discrimination over the peroneal nerve distribution of the right lower extremity. (PageID.1409).  He recommended elbow bracing at night, an AFO brace, and referred Plaintiff to neurology.  (PageID.1408).  On May 16, 2018, Plaintiff underwent right infraspinatus trigger point, left sacroiliac joint, and left greater trochanteric bursa injections in an attempt to provide some pain relief.  (PageID.1224-26).

11

Plaintiff was then hospitalized at Flower Hospital from June 22, 2018 to June 25, 2018, for worsening depression, with suicidal thoughts and a plan to overdose on her pills. (PageID.1287-1302).  She reported feeling overwhelmed with stress and the fact that she had been unable to work for several months due to her medical issues.  (PageID.1297). After several days of inpatient treatment, she was discharged with the addition of Abilify to her medication regimen.  (PageID.1299).

On June 30, 2018, Plaintiff underwent a consultative physical examination with Mark Mounayer, M.D.  (PageID.1304-08).  On examination, Plaintiff had no difficulty getting on and off the exam table, heel and toe walking, or squatting.  (PageID.1305). However, she had decreased range of motion in both the lumbar and cervical spine, as well as positive straight leg raise testing bilaterally in both the seated and supine positions. (PageID.1305-06).  Dr. Mounayer also noted a history of neuropathy, arthritis, insomnia, and migraine headaches with nausea, vomiting, and photosensitivity.  (PageID.1304).

On July 3, 2018, Plaintiff followed up with PA Wilson after her hospitalization for suicidal ideation.    (PageID.1323-24).    At that time, Plaintiff indicated that her psychological symptoms had improved with the addition of Abilify to her medication regimen.  (PageID.1323).  PA Wilson recommended that she continue with therapy and see a psychiatrist to determine her ongoing medication needs.  (PageID.1324).

On July 19, 2018, Plaintiff underwent a consultative examination with Gale Oliver-Brannon, Ph.D.  (PageID.1277-80).  Among other medications, Plaintiff reported taking Abilify, Cymbalta, and diazepam daily, saying they caused sleepiness. (PageID.1277). Dr. Oliver-Brannon observed that Plaintiff had unkempt attire, poor dental condition, and

reduced recent memory. (PageID.1278). On mental status examination, Dr. Oliver-Brannon noted low mood, sad affect, and limited psychomotor activity. (*Id.*). Dr. Oliver-Brannon diagnosed Plaintiff with moderate to severe recurrent major depressive disorder, generalized anxiety disorder, panic disorder, and agoraphobia. (PageID.1279). Dr. Oliver-Brannon's further observed that Plaintiff was "overwhelmed by her psychiatric symptoms" and would benefit from ongoing psychiatric medications and mental health services. (*Id.*). Dr. Oliver-Brannon concluded by noting: "I suspect the pressure of employment would be a major factor in decompensation on her part and [she] does not present as a viable candidate for employment." (*Id.*).[7]

On October 30, 2018, Plaintiff followed up with Dr. McNamee, reporting that she had recently been sent for an MRI of her brain and cervical spine, as well as an EMG of the contralateral side of her body, all of which came back within normal limits. (PageID.1404). Her motor and sensory nerve function were improving, but she indicated she would continue to follow up with her neurologist about this. (*Id.*).

In February of 2019, Plaintiff presented to the emergency room twice – once with a migraine headache and once with low back pain. (PageID.1345-88). Each time, she was treated with medication and released. On February 27, 2019, Plaintiff followed up with PA Wilson regarding her "worsening chronic pains." (PageID.1309). She was prescribed additional pain medication and advised to return to the emergency room if her pain

---

[7] On July 24, 2018, state agency psychologist James Tripp, Ed.D. reviewed Plaintiff's records and concluded that she can perform simple work and "have occasional contact with coworkers, supervisors and the public." (PageID.148).

worsened again.  (PageID.1310).

On May 13, 2019, Plaintiff saw David Cooke, M.D. at the Michigan Medicine Back and Pain Center.  (PageID.1397-1401).  Plaintiff reported that her neck, back, and hip pain continued to be serious limiting issues.  (PageID.1399).  Dr. Cooke diagnosed Plaintiff with chronic pain in several spinal locations and noted that she also had a significant history of mood disorders.  (PageID.1397).  He recommended increasing Plaintiff's dose of gabapentin, even though she reported experiencing cognitive side effects.  (PageID.1398). Dr. Cooke did not believe that further spinal injections would be beneficial.  (*Id.*).

On July 9, 2019, treating family physician Mark Koehl, M.D., with the Family Medical Center, provided a medical source statement and opined – based on 55 primary care visits – that Plaintiff cannot sustain sedentary work activity; that her pain complaints are consistent with the objective findings and diagnoses; and that her depression and anxiety affect her physical condition.  (PageID.1389-93).  Dr. Koehl also completed a Physical Capacities Evaluation, in which he opined that, due to her pain and spinal impairment, Plaintiff can sit/stand/walk less than one hour each; cannot not perform any lifting on a regular and sustained basis; cannot push or pull with either arm or leg; requires complete freedom to rest and/or change position; and will have pain when changing positions.  (PageID.1394-96).

A physical examination performed on August 16, 2019, by consultative examiner R. Scott Lazzara, M.D., an internist, observed decreased right upper extremity strength, signs of mild depression, tenderness over both sacroiliac joints, and mild right leg weakness.  (PageID.1421-25).  Dr. Lazzara noted that a "neuropsychological evaluation

may be helpful." (PageID.1425).

On December 14, 2019, Plaintiff saw PA Wilson for bilateral leg numbness, right arm numbness, and left arm pain. (PageID.1449-52). PA Wilson ordered an MRI of Plaintiff's lumbar spine, which was performed on December 19, 2019 and showed minimal circumferential disc bulge with subarticular component on the left causing mild left neural foramina narrowing. (PageID.1463). PA Wilson also referred Plaintiff again to a neurologist. (PageID.1449).

On January 14, 2020, Plaintiff returned to see PA Wilson for right shoulder and neck pain. (PageID.1513-14). PA Wilson noted that Plaintiff had pain with palpation along the AC joint and posterior aspect of the shoulder, as well as pain in all planes with range of motion and decreased abduction. (PageID.1514). An x-ray of Plaintiff's shoulder showed arthritic changes but was otherwise normal, so PA Wilson recommended physical therapy. (PageID.1513). On January 23, 2020, Plaintiff was seen for entrapment of the right ulnar nerve at the elbow and referred to orthopedic surgery. (PageID.1457).

On March 11, 2020, Plaintiff saw Noor Pirzada, M.D., a neurologist, for her persistent bilateral leg tingling/numbness. (PageID.1526-30). She reported taking Lyrica but said it was not controlling her pain at all. (PageID.1526). On examination, she had 5/5 strength all over; her sensory exam was inconsistent, as she had patchy areas of decreased pinprick, cold, and light touch in both feet and legs. (PageID.1529). Dr. Noor indicated she would obtain new EMG/nerve conduction studies, as well as a neuropathy panel. (PageID.1530).

On March 31, 2020, Plaintiff presented to Marc Strickler, M.D., a physical medicine

specialist, for her back pain.  (PageID.1522-25).  Plaintiff indicated she had been treating with Dr. Cooke at Michigan Medicine, saying she had undergone trigger point injections and a lumbar radiofrequency ablation (which had provided some relief for approximately 3-4 months).  (PageID.1522).  On examination, Plaintiff had abnormal Patrick's testing on both sides, tenderness in her lower back and SI joints, and decreased sensation to light touch and pinprick in the right lateral leg.  (PageID.1524).  Dr. Strickler injected Plaintiff's SI joints with lidocaine and Kenalog.  (*Id.*).  Plaintiff continued to treat with Dr. Strickler throughout 2021 and into 2022, generally receiving trigger point injections in an attempt to control her ongoing pain.  (PageID.1924-40).  In September 2022, Dr. Strickler recommended that Plaintiff be referred to chronic pain counseling.  (PageID.1926).

Notes from PA Wilson dated July 26, 2022, recount that Plaintiff's migraines had been worse since she contracted COVID, and he again referred her to neurology. (PageID.1896-97). Sylvia Anagnos, M.D., a neurologist, diagnosed Plaintiff with migraine headaches on August 18, 2022.  (PageID.1912).  Dr. Anagnos' notes indicate that Plaintiff's headaches included sharp pain usually behind the left eye at 8/10 intensity, nausea, and sound sensitivity.  (PageID.1916).  Plaintiff underwent a CT angiogram of her head on August 29, 2022, which was negative for aneurysm but indicated possible mild cerebellar tonsillar ectopia.  (PageID.1913).

After this Court's remand, at the ALJ's request, an internal medicine consultative examination was performed on October 17, 2022, by Tanvir Qureshi, M.D.  Dr. Qureshi found pain and limitation in Plaintiff's right shoulder.  (PageID.1953-55).  Dr. Qureshi diagnosed rotator cuff tear or rupture, osteoarthritis, and fibromyalgia, and limited Plaintiff

16

to only occasionally reaching in all directions with the right arm.  (PageID.1949, 1955).

On December 2, 2022, Plaintiff saw PA Wilson again, at which point he assessed long COVID.  (PageID.1958).  Further research and revisiting of this issue was planned. It was noted that Plaintiff had been dealing with fatigue, frequent migraines, and dizziness, with symptom onset closely associated with a COVID infection.  (*Id.*).

In a letter dated January 4, 2023, nurse practitioner Mindy Howard stated that Plaintiff had been under her care since April 20, 2022.  (PageID.1962).  NP Howard wrote: "Her disability from my medical opinion is Chronic Obstructive Pulmonary Disease with exacerbations as well as Post COVID Brain Fog.  Daily work tasks of being able to sit, stand, or walk for 4 to 5 hours a day is not possible for her."  (*Id.*).

Finally, on January 17, 2023, Dr. Strickler wrote a letter explaining that since first being evaluated in his office on February 4, 2020, Plaintiff had presented with chronic low back pain, anxiety, fatigue, vertigo, fibromyalgia, and posttraumatic stress disorder.[8] (PageID.1963).  Dr. Strickler recounted that she underwent multiple treatments including repeat injections.  More recently, her long COVID syndrome, migraines, and neuropathy were complicating her symptomatology.  (*Id.*).  Dr. Strickler diagnosed "fibromyalgia, chronic pain in multiple areas of her body, anxiety, depression, possible migrainous vertigo versus COVID associated vertigo with reports of fatigue, cognitive complaints, and worsening mood disorders of anxiety and depression."  (*Id.*).  Plaintiff reported decreased sensation in her hands and feet.  (PageID.1964).  His "[e]xamination was notable for

---

[8] This letter was obtained from Dr. Strickler at the request of the ALJ, who specifically asked for a more recent "physical assessment" from him.  (PageID.1659).

anxiety, depression, and she had some imbalance on Romberg testing." (*Id.*).  Dr. Strickler also noted findings of tenderness in multiple areas and positive impingement maneuvers on the shoulders.  (*Id.*).  Plaintiff also "has had some decline in functional abilities and reports difficulty performing activities … because of pain, fatigue, decreased balance" with "limited tolerance for prolonged sitting or standing for more than 10-15 minutes without having to change positions."  (*Id.*).  Dr. Strickler opined: "It is likely that these painful conditions will cause absences from work, potentially more than four a month."  (*Id.*).

### 3.  The ALJ Erred Again in Evaluating the Medical Opinion Evidence

As set forth above, in its remand order, the Appeals Council specifically discussed the ALJ's initial failure to give proper consideration to the opinion of Dr. Oliver-Brannon, despite her supportive examination findings.  (PageID.1702).  Accordingly, the Appeals Council remanded the case to the ALJ for further evaluation of this opinion. (PageID.1703).  Additionally, the Appeals Council directed the ALJ to "take any further action needed to complete the administrative record and issue a new decision."  (*Id.*).  The ALJ deemed it necessary to obtain a new consultative examination, which was provided by Dr. Qureshi.  (PageID.1942-55).  For the reasons set forth below, however, the Court finds that the ALJ erred in evaluating the opinions of both Dr. Oliver-Brannon and Dr. Qureshi.

The regulatory criteria for weighing medical opinions with respect to claims, like Plaintiff's, filed on or after March 27, 2017, are set forth at 20 C.F.R. § 404.1520c. Specifically, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." 20 C.F.R. § 404.1520c(a).  Rather, ALJs

must "articulate how [they] considered the medical opinions … using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."   20 C.F.R. § 404.1520c(b)(1).  These factors include:

> (1)    Supportability.   The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2)    Consistency.   The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

> (3)    Relationship with the claimant.   This factor combines consideration of the issues in paragraphs (c)(3)(i)-(v) of this section … [which include length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship].

> (4)    Specialization.  The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

> (5)    Other factors.  We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding.

20 C.F.R. § 404.1520c(c).  The most important factors in this analysis are a medical opinion's supportability and consistency with other evidence in the record.  *See* 20 C.F.R. § 404.1520c(b)(2).   "Supportability" refers to the relevance of the objective medical evidence and supporting explanations presented by a medical source to support his or her opinion.  *See* 20 C.F.R. § 404.1520c(c)(1).   "Consistency" refers to how consistent a

19

medical opinion is with the evidence from other medical and non-medical sources.  *See* 20 C.F.R. § 404.1520c(c)(2).   ALJs are required to explain how they considered the supportability and consistency factors for a medical source's medical opinions in the determination or decision.  *See* 20 C.F.R. § 404.1520c(b)(2).

a.      <i>Dr. Oliver-Brannon</i>

As set forth above, on July 19, 2018, Plaintiff underwent a consultative examination with Dr. Oliver-Brannon.  (PageID.1277-80).  Dr. Oliver-Brannon observed that Plaintiff had unkempt attire, poor dental condition, and reduced recent memory.  (PageID.1278). On mental status examination, Dr. Oliver-Brannon noted low mood, sad affect, and limited psychomotor activity.  (*Id.*).  She diagnosed Plaintiff with moderate to severe recurrent major depressive disorder, generalized anxiety disorder, panic disorder, and agoraphobia. (PageID.1279).   Dr. Oliver-Brannon's observations indicated that Plaintiff was "overwhelmed by her psychiatric symptoms" and would benefit from ongoing psychiatric medications and mental health services.  (*Id.*).  Dr. Oliver-Brannon concluded by noting: "I suspect the pressure of employment would be a major factor in decompensation on her part and [she] does not present as a viable candidate for employment."  (*Id.*).

In its Order vacating the Commissioner's first decision and remanding the case to the ALJ, the Appeals Council specifically noted that the ALJ erred in evaluating Dr. Oliver-Brannon's opinion, saying the ALJ:

> … found the opinion of Gayle Oliver-Brannon Ph.D., a psychological consultative examiner, that 'the claimant's alleged symptoms as opposed to Dr. Oliver-Brannon's actual objective findings … were, overall, unremarkable'….  However, the [ALJ] did not consider that Dr. Oliver-Brannon observed limited psychomotor activity, low

20

> mood, and sad affect.  Given these abnormal objective findings, Dr.
> Oliver-Brannon's normal findings in other areas do not reasonably
> show that the doctors [sic] overall findings were 'unremarkable'
> overall, or that the doctor relied significantly on [Plaintiff's]
> subjective complaints.

(PageID.1702) (internal citations omitted).  Thus, the Appeals Council remanded the case

to the ALJ for further evaluation of this medical source opinion.  (PageID.1703).

On remand, the ALJ addressed Dr. Oliver-Brannon's statement in her report that

"she suspects 'the pressure of employment would be a major factor in decompensation on

[the claimant's] part and [that she] does not present as a viable candidate for employment.'"

(PageID.1598) (quoting PageID.1279).   However, the ALJ "found this opinion

unpersuasive for several reasons[,]" explaining as follows:

> First, this statement is vague and provides no function-by-function
> analysis of how the claimant's mental impairments limit the
> claimant's functioning.  Second, this opinion is inconsistent with the
> consultative exam and appears to be based more upon the claimant's
> alleged symptoms as opposed to Dr. Oliver-Brannon's actual
> objective findings.  Specifically, it was noted the claimant had a low
> mood, sad affect, and limited psychomotor activity, a cooperative
> behavior, a goal-oriented attitude, clear/logical speech, intact
> memory, and intact judgment/insight.  Further, a finding that the
> claimant's mental impairments prevent her from engaging in all
> employment is not supported by the recent evidence, including
> multiple unremarkable mental status examinations and evidence of
> improved symptoms.  Specifically, [at her consultative examination
> with Dr. Qureshi,] on October 17, 2022, the claimant's memory was
> intact, she was fully oriented, her judgment and insight were intact,
> and her mood and affect [were] normal.

(*Id.*) (internal citations omitted).

In her motion for summary judgment, Plaintiff argues that the ALJ's evaluation of

Dr. Oliver-Brannon's opinion was erroneous in several respects.   (ECF No. 11,

PageID.1991-95).  Given the Commissioner's willingness to stipulate to remand, it would appear that he agrees – at least to some extent – as does the Court.  Specifically, the ALJ's decision to find this opinion "unpersuasive" is erroneous for several reasons:

- The ALJ's criticism of the opinion as "vague" and lacking a "function-by-function analysis" of how Plaintiff's mental impairments would limit her functioning (PageID.1598) overlooks the likely interaction between these impairments and the stressors of a work environment.  An opinion by a psychologist, who is an expert in mental health, that Plaintiff would decompensate under the "pressure of employment" is a medical opinion based on objective observations and is certainly relevant to assessing her RFC.  *See* 20 C.F.R. § 404.1520c(c)(4) ("The medical opinion … of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion … of a medical source who is not a specialist in the relevant area of specialty.").

- In characterizing Dr. Oliver-Brannon's opinion as being "based more upon [Plaintiff's] alleged symptoms" than "Dr. Oliver-Brannon's actual objective findings," the ALJ committed the same error the Appeals Council identified in its remand order.  Specifically, the Appeals Council previously noted that Dr. Oliver-Brannon's opinion was *not* based solely on Plaintiff's "subjective complaints" but, rather, was supported by "abnormal objective findings" such as "limited psychomotor activity, low mood, and sad affect." (PageID.1702) (internal citations omitted).  Thus, the ALJ's finding in this respect directly contradicts the Appeals Council's remand order.

- Finally, the ALJ's rejection of Dr. Oliver-Brannon's opinion that Plaintiff's mental impairments "prevent her from engaging in all employment" as "not supported by the recent evidence" is based primarily on a few normal findings made by Dr. Qureshi in October 2022 (judgment and insight intact, mood and affect normal).  (PageID.1598) (citing PageID.1955).  However, the fact that a doctor with no experience in psychiatric care, who was charged with performing a consultative *physical* examination, made some passing observations regarding Plaintiff's mental status does not undermine Dr. Oliver-Brannon's well-supported medical opinion.

In summary, the ALJ has (now twice) erred in evaluating Dr. Oliver-Brannon's opinion.  In rejecting Dr. Oliver-Brannon's opinion that Plaintiff is "overwhelmed by her

psychiatric symptoms" and that "the pressure of employment would be a major factor in decompensation on her part" (PageID.1279), the ALJ ignored a host of other record evidence regarding Plaintiff's mental impairments.  For example, the ALJ did not even mention Plaintiff's four-day inpatient stay in the psychiatric unit at Flower Hospital in June of 2018, due to severe recurrent depression and suicidal ideation, with a plan to overdose on prescribed medication.  (PageID.1287-1302).  At that time, Plaintiff reported a history of past psychiatric admissions (PageID.1298), a fact that the ALJ also ignored.  There is a significant amount of additional evidence in the record demonstrating that Plaintiff suffers from disabling mental impairments.  (*E.g.*, PageID.578-79, 1234-38, 1239-41, 1242-50, 1319-25 (ongoing treatment for depression and anxiety); PageID.1397 (Dr. Cooke's impression that Plaintiff suffers from persistent depressive disorder, panic disorder with agoraphobia, and severe panic attacks); PageID.1964 (Dr. Strickler's January 2023 observation that Plaintiff's examination was notable for anxiety and depression)).[9]  For all of these reasons, the Court finds that the ALJ's decision to reject Dr. Oliver-Brannon's opinion as "unpersuasive" is not supported by substantial evidence.

### b.    Dr. Qureshi

Plaintiff also argues that the ALJ erred in evaluating Dr. Qureshi's October 2022 opinion.  (ECF No. 11, PageID.1996-98).  In relevant part, Dr. Qureshi diagnosed Plaintiff with a rotator cuff tear or rupture and limited her to only occasional reaching in all directions with the right arm.  (PageID.1949, 1955).  In evaluating Dr. Qureshi's opinion,

---

[9] Additionally, Dr. Tripp's opinion – which limits Plaintiff to only occasional contact with coworkers, supervisors and the public – further supports Dr. Oliver-Bannon's conclusions.

the ALJ found it "not persuasive" because it was "not consistent with the clinical findings during the consultative exam."[10]   (PageID.1599).   In reaching this conclusion, however, the ALJ misstated Dr. Qureshi's findings, incorrectly claiming that he found Plaintiff's "range of motion was within normal limits" and "her exam was totally unremarkable." (PageID.1599-1600).   In fact, on examination, Dr. Qureshi reported that Plaintiff had abnormal ranges of motion in her right shoulder in terms of abduction, internal and external rotation, and forward elevation, and had pain and limitation in her right shoulder. (PageID.1945, 1955).   He also diagnosed her with "rotator cuff tear or rupture" of the shoulder, osteoarthritis, and fibromyalgia.   (PageID.1955).   Indeed, the Commissioner concedes that "the ALJ's evaluation of Dr. Qureshi's opinion was not supported by the record …."[11]   (ECF No. 13, PageID.2009).   Thus, the ALJ's decision to reject Dr. Qureshi's opinion as "not persuasive" is not supported by substantial evidence.

    *4.    Remedy*

      Not surprisingly, given the errors identified above, the Commissioner concedes that

---

[10] Ironically, despite finding Dr. Qureshi's opinion "not persuasive," the ALJ repeatedly relied on this opinion to discredit the opinions of every single one of Plaintiff's treating and consulting providers.   (*E.g.*, PageID.1598 (finding Dr. Oliver-Brannon's opinion unpersuasive, in part because it was not supported by Dr. Qureshi's findings that Plaintiff's memory was intact, she was fully oriented, her judgment and insight were intact, and her mood and affect were normal); PageID.1598, 1599, 1600 (finding the opinions of Dr. Koehl and PA Wilson, Dr. Lazzara, NP Howard, and Dr. Strickler unpersuasive because they were inconsistent with Dr. Qureshi's findings that Plaintiff's "cardiovascular, respiratory, gastrointestinal, genitourinary, endocrine, head, and lymphatic exams were unremarkable")).

[11] However, the Commissioner argues that there remains an outstanding issue regarding how persuasive Dr. Qureshi's opinion is under the regulations, and it is the ALJ – not the Court – who is tasked with evaluating opinion evidence.   (ECF No. 13, PageID.2009-10) (citing 20 C.F.R. § 404.1520c).

remand is warranted.   However, the Commissioner argues that awarding benefits is improper and that, instead, the Court should remand the matter for further evaluation of the medical opinion evidence, further evaluation of Plaintiff's RFC, the taking of any further action needed to complete the administrative record and resolve these issues, and issuance of a new decision.   (ECF No. 13, PageID.2007-08).   The Commissioner also concedes that the case should be assigned to a new ALJ.   (*Id.*).

Usually, when the Court determines that an ALJ's decision is not supported by substantial evidence, it remands the matter to allow the ALJ to reassess whether the claimant is entitled to disability benefits.   However, if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits, the Court may reverse a decision of the Commissioner and award benefits.   *See Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).   In other words, a judicial award of benefits is proper where the proof of entitlement to benefits is overwhelming or where the proof of entitlement is strong and evidence to the contrary is lacking.   *Id.*   "This comports with the principle that 'where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.'"   *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *18 (E.D. Mich. Apr. 28, 2016) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citations omitted)).

While remanding for an award of benefits is rare, where a particular case's nuanced facts warrant it, judges in this district have done so.   For example, in *Donahue v. Massanari*, 166 F. Supp. 2d 1143, 1149 (E.D. Mich. 2001), the court remanded the case

25

for an award of benefits because "the Commissioner [] had two opportunities to deny Plaintiff benefits in a legal fashion – and [] still failed to do so."  The plaintiff in *Donahue* was approaching 59 years old; his application had been pending for seven years; the court had remanded the case for further consideration three years earlier; and the record had changed little since that initial remand.  *Id.* at 1145, 1150.  Moreover, the record lacked persuasive evidence supporting the Commissioner's position that the plaintiff could perform light work.  *Id.* at 1148.  Because of those factors, the court remanded the case for an award of benefits.  *Id.* at 1150.  *See also Yoder v. Comm'r of Soc. Sec.*, No. 10-14941, 2011 WL 6308313, at *7 (E.D. Mich. Dec. 16, 2011) ("This Court remands this case for an award of benefits because Plaintiff has endured considerable delay and proof of disability is strong and evidence to the contrary is lacking."); *Emmendorfer v. Comm'r of Soc. Sec.*, No. 20-10123, 2021 WL 850559, at *5 (E.D. Mich. Feb. 16, 2021) (remanding after three administrative hearings, two earlier remand orders (one from the court and one from the Appeals Council), and finding "enough is enough").

Here, Plaintiff has endured "considerable delay and proof of disability is strong and evidence to the contrary is lacking." *Yoder*, 2011 WL 6308313, at *7.  The Commissioner concedes that – even after being explicitly directed to properly evaluate the medical evidence on remand – the ALJ not only made new errors (such as the improper evaluation of Dr. Qureshi's opinion), but repeated old ones.  Indeed, as the Court explained above, *supra* at 20-23, the ALJ erred for a second time in evaluating Dr. Oliver-Brannon's opinion, which clearly supports an award of benefits, in that it supportably found that Plaintiff is "overwhelmed by her psychiatric symptoms" and that "the pressure of employment would

26

be a major factor in decompensation on her part …." (PageID.1279).

Having fully considered all the medical evidence of record discussed in detail above, as well as Plaintiff's own testimony regarding disabling pain, fatigue, and the inability to concentrate, there exists strong evidence that Plaintiff's combined impairments render her disabled under the Social Security regulations.  Indeed, in addition to Dr. Oliver-Brannon's opinion, both Dr. Strickler and Dr. Koehl opined that Plaintiff is unable to perform even sedentary work on a sustained basis.  And, in his short summary judgment motion (ECF No. 13), the Commissioner fails to identify any specific evidence in the record that would support denying Plaintiff's application for benefits, and instead simply requests yet another review before a different ALJ.

In sum, this case has been pending for more than six years,[12] and the fully developed record, which includes strong proof of Plaintiff's entitlement to benefits and a lack of evidence to the contrary, has already been evaluated twice – albeit incorrectly both times – such that remand would merely involve presentation of the same, cumulative evidence.  Thus, the Court finds that the Commissioner's decision should be reversed, and benefits

---

[12] While the Court agrees with the Commissioner that "the length of the proceedings cannot be the sole basis upon which a Court orders a reversal of the Commissioner's decision for payment of benefits" (ECF No. 13, PageID.2008, n. 1), the delay here is most certainly not the Court's "sole basis" for its decision, and the length of time a case has been pending may be considered as *one* factor that weighs in favor of remanding for an award of benefits.  *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (noting, where there had been two remands and three administrative hearings, new evidence would not be relevant and remand for an award of benefits was appropriate); *see also Masters v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 726, 734 (S.D. Ohio 2019) (remanding for an award of benefits where, after a prior court remand, the ALJ did not follow the court's directives and there was "uncontroverted evidence of record in support of a finding of disability").

should be awarded.  *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 865 (6th Cir. 2011) (remanding for an award of benefits where "a denial of benefits on remand would necessarily be deemed unsupported by substantial evidence in the record"); *Gibbs. v. Comm'r of Soc. Sec.*, No. 12-14643, 2013 WL 5423612, at *15 (E.D. Mich. Sept. 26, 2013) (remanding for an award of benefits where there were "no unresolved legal or factual issues"); *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 439 (6th Cir. 2013) (remanding for an award of benefits where "substantial evidence on the record as a whole supports a finding of total disability").

### E.     Conclusion

For the foregoing reasons, the Court **DENIES** the Commissioner's Motion for Summary Judgment **(ECF No. 13)**; **GRANTS** Plaintiff's Motion for Summary Judgment **(ECF No. 11)**; and pursuant to sentence four of 42 U.S.C. § 405(g), **REMANDS** this case to the Commissioner for an **AWARD OF BENEFITS**.

**IT IS SO ORDERED.**

Dated: September 17, 2024          s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                  United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 17, 2024.

                                  s/Eddrey O. Butts
                                  EDDREY O. BUTTS
                                  Case Manager